# United States Court of Appeals

## For the First Circuit

No. 03-1493

CARMEN L. RODRÍGUEZ-GARCÍA,

Plaintiff, Appellant,

v.

MUNICIPALITY OF CAGUAS; HON. WILLIAM MIRANDA-MARÍN, as Mayor of
Caguas and in his personal capacity; WILFREDO PUIG, as Vice Mayor
of Caguas and in his personal capacity,

Defendants, Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Héctor M. Laffitte, U.S. District Judge]

Before

Torruella, Lynch, and Howard,
Circuit Judges.

Godwin Aldarondo-Girald, with whom Aldarondo Girald Law Office
was on brief, for appellant.

Kenneth Colon for appellees William Miranda-Marín and Wilfredo
Puig.

Grisselle Gonzalez-Negron, with whom Faccio & Pabon-Roca and
Luis E. Pabon-Roca were on brief, for appellee Municipality of
Caguas.

January 7, 2004

**LYNCH**, <u>**Circuit Judge**</u>.  The American common law rule is that generally the filing of a prior judicial action does not toll the statute of limitations.  Puerto Rico has chosen a different rule, permitting such tolling.  That rule gives rise to this appeal.

The federal civil rights claims brought by Carmen L. Rodríguez-García, a terminated public employee, were not timely unless they were saved by tolling based on an earlier complaint that she filed in the courts of Puerto Rico and later amended.  Her claims are tolled only if either her original or her amended complaint in the Puerto Rico courts was timely and stated causes of action identical to those in her later federal complaint.  In our federal system of justice built on both federal and state or Commonwealth courts, this case raises interesting questions about the meaning of the "identicality" requirement.  Given the generalized pleading rules and the latitude of Fed. R. Civ. P. 12(b)(6), it is not always easy to tell whether identical claims are stated in different complaints.  Here, the district court thought that the claims were not identical and so dismissed the complaint.  Mindful of generous pleading rules and Puerto Rico's liberal approach to relation-back rules, we reach the opposite conclusion and reinstate the case.

**I.**

On October 25, 2000, Rodríguez-García brought suit in Puerto Rico Superior Court in Caguas against the Municipality of Caguas, through its mayor William Miranda-Marín; Luisa Flores, in her capacity as Director of the Department of Beautification, Cleaning, and Urbanism and in her personal capacity; and XYZ Insurance Company. The complaint alleged the following facts.

Rodríguez-García was an executive secretary at the Department of Beautification, Cleaning, and Urbanism of the Municipality of Caguas in Puerto Rico. She was assigned to Flores, who was the Director of the Department. Flores came under investigation by the Office of Government Ethics, and Rodríguez-García testified in that investigation. During January and February of 2000, Rodríguez-García applied to the State Insurance Fund for medical treatment for an emotional condition caused by Flores's "uncouth and rude" behavior toward her. When Rodríguez-García returned to work on February 22, 2000, Wilfredo Puig, vice-mayor of Caguas, informed her that she had been transferred and ordered her to report to the Department of Education. He told her that Flores was under investigation by the Office of Government Ethics and that Rodríguez-García was being transferred because Flores did not feel comfortable working with her.

On February 24, 2000, Rodríguez-García reported to the Department of Education but was told that there was no physical

space for her there.  She was sent to the Human Resources Office, where director Armando Meléndez told her to go home until a post was found for her.  Several days later, Meléndez called Rodríguez-García and instructed her to report to the Human Resources Office and then go to work at the Office of Federal Funds and Affairs.  On February 28, when Rodríguez-García went to the Human Resources Office, Meléndez's secretary handed her a letter addressed to the director of the Office of Federal Funds and Affairs.  The letter described Rodríguez-García's placement in that office as temporary and referred to her transfer as a move that she had requested. Rodríguez-García informed Meléndez and Puig that she had not requested this transfer.  The next day, Rodríguez-García was nonetheless transferred to the Office of Federal Funds and Affairs. No duties were assigned to her there.

On March 8, 2000, Rodríguez-García's attorney sent a letter to Mayor Miranda-Marín requesting that he reinstate Rodríguez-García to her previous post.  In a letter dated March 27, 2000, Eileen Herrero, Director of Human Resources for the Municipality of Caguas, replied that if Rodríguez-García wished to be reassigned to her original post, she would be.  But then Leslie Rodríguez, Acting Director of the Human Resources Office, met with Flores, who refused to reinstate Rodríguez-García, and Rodríguez-García was not reinstated.

Based on these factual allegations, the complaint asserted that Rodríguez-García had been transferred in retaliation for her statement before the Office of Government Ethics, and that such a retaliatory transfer violated 29 P.R. Laws Ann. § 194a, which prohibits employers from discriminating against employees for providing testimony, statements, or information before a legislative, administrative, or judicial forum in Puerto Rico. The complaint also alleged that "plaintiff's transfer was illegal, arbitrary, whimsical, <u>violates plaintiff's constitutional rights, such as the due process of law, procedural as well as substantive</u>, and violates her record to ownership and to her dignity as a person" (emphasis added). The complaint did not specify whether these constitutional claims were based on the Puerto Rico Constitution or the United States Constitution. Nor did the complaint expressly refer to political discrimination or the right to freedom of speech or affiliation. Rodríguez-García sought damages and injunctive relief reinstating her.

On August 31, 2001, Rodríguez-García amended her complaint. The amended complaint dropped Flores, who had passed away, as a defendant. It also included several new allegations. The amended complaint alleged that the Municipality of Caguas and Mayor Miranda-Marín refused to reinstate Rodríguez-García to her position because she had offered information harmful to the Popular Democratic Party (PDP). It also alleged that Flores remarked that

-5-

she had no confidence in Rodríguez-García because Rodríguez-García was not a member of the PDP and wanted to harm the party. The amended complaint further alleged that Rodríguez-García was "charged of not being a PDP'er ('belonging to the Popular Democratic Party') and this constitutes a[n act of] political discrimination" (emphasis added).

On November 7, 2001, Rodríguez-García filed a complaint in federal district court in Puerto Rico against the Municipality of Caguas and against Mayor Miranda-Marín and Vice-Mayor Puig in their personal and official capacities. This federal complaint alleged that Rodríguez-García had been discriminated against "because of her political beliefs . . . and in reprisal for providing information to the Ethics Office regarding an investigation of the Municipality['s] political affairs." The complaint sought relief under the First, Fifth, and Fourteenth Amendments of the United States Constitution; 42 U.S.C. §§ 1981, 1983, and 1985; Article II §§ 1, 6, and 7 of the Puerto Rico Constitution; the general tort laws of Puerto Rico, 31 P.R. Laws Ann. §§ 5141 and 5142; and the public policy exception to 29 P.R. Laws Ann. § 185a, see Negrón v. Caleb Brett USA, Inc., 212 F.3d 666, 667 (1st Cir. 2000). The complaint sought injunctive relief, damages, attorneys' fees and costs, and a declaratory judgment. In addition to repeating the facts alleged in the amended state complaint, the federal complaint added allegations that the

defendants acted intentionally or with deliberate indifference and that Mayor Miranda-Marín and Vice-Mayor Puig approved or ratified the discrimination against Rodríguez-García under color of law. Furthermore, while the original state complaint alleged violations of Rodríguez-García's constitutional rights, such as due process, and her right to record of ownership, the federal complaint replaced this language with allegations that the defendants violated Rodríguez-García's right to "freedom of speech and affiliation."

Two days after filing the federal complaint, Rodríguez-García filed a voluntary dismissal without prejudice of her claims in the Puerto Rico courts. Most likely, that was because jury trials in civil cases are available in federal court but not in the Commonwealth courts. See Grajales-Romero v. American Airlines, Inc., 194 F.3d 288, 293 (1st Cir. 1999). On October 4, 2002, the defendants moved for summary judgment in the federal case, arguing that the federal complaint was time-barred because it was filed after the applicable statute of limitations had expired. They also argued in their motion for summary judgment that Rodríguez-García had failed to establish a cognizable claim for political discrimination, that the individual defendants were entitled to qualified immunity, and that §§ 1981 and 1985 do not apply to political discrimination.

On March 12, 2003, the district court granted the defendants' motion for summary judgment based on the timeliness issue. The court determined that the plaintiff's federal claims borrow Puerto Rico's one-year statute of limitations for tort claims and that Rodríguez-García's November 7, 2001 complaint was untimely because it was filed more than one year after her February 29, 2000 transfer. The court held that the limitations period was not tolled by Rodríguez-García's filing of her state complaint on October 25, 2000. The court noted that the federal claims borrow Puerto Rico law as to tolling, that 31 P.R. Laws Ann. § 5303 provides that the limitations period is "interrupted by [the] institution [of actions] before the courts," and that Rodríguez-García had filed a timely state complaint. Quoting Fernandez v. Chardon, 681 F.2d 42, 47 (1st Cir. 1982), the court determined that § 5303 tolls the statute of limitations for claims only when "identical causes of action" have been filed. The claims in Rodríguez-García's state complaint, the court found, were not identical to her federal claims. The court determined that her state complaint, even after it was amended, never alleged federal constitutional violations. The court noted that the state complaint did not refer to a right to freedom of speech or of political affiliation. Although the Puerto Rico complaint did allege a violation of due process without indicating whether this right was based on the federal or state constitution, the court

-8-

found that this was not an assertion of a federal constitutional claim. Having concluded that the federal claims were untimely, the court then dismissed without prejudice the remaining claims arising under Puerto Rico law.

Rodríguez-García appeals from the court's grant of summary judgment, arguing that her federal claims were timely and that, in the alternative, the claims arising under Puerto Rico law were still within the statute of limitations and should not have been dismissed.

**II.**

When summary judgment has been granted on the grounds that a complaint is time-barred, our review is de novo. See Garcia-Guzman v. Villoldo, 273 F.3d 1, 3 (1st Cir. 2001). We hold that the district court erred in dismissing Rodríguez-García's federal claims as untimely.

Unless the filing of the state complaints tolled the statute of limitations, the federal claims were not timely. Sections 1981, 1983, and 1985 borrow the forum state's statute of limitations for personal injury claims. See Goodman v. Lukens Steel Co., 482 U.S. 656, 660-62 (1987) (§ 1981); Wilson v. Garcia, 471 U.S. 261, 277-280 (1985) (§ 1983); Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003) (§ 1985).

Here, the parties agree that the appropriate statute of limitations is Puerto Rico's one-year period governing tort

actions, 31 P.R. Laws Ann. § 5298(2). See Guzman-Rivera v.
Rivera-Cruz, 29 F.3d 3, 4-5 (1st Cir. 1994); Altair Corp. v.
Pesquera de Busquets, 769 F.2d 30, 31 (1st Cir. 1985). Federal law
determines the date on which the claim accrued. Rivera-Muriente v.
Agosto-Alicea, 959 F.2d 349, 353 (1st Cir. 1992). Under federal
law, the limitations period begins to run when the plaintiff "knows
or has reason to know of the injury which is the basis for his
claim." Rodriguez Narvaez v. Nazario, 895 F.2d 38, 41 n.5 (1st
Cir. 1990). The parties do not appear to dispute that the claim
accrued on February 29, 2000, when Rodríguez-García was transferred
to the Office of Federal Funds and Affairs. Absent any tolling,
Rodríguez-García had to file her federal complaint on or before
March 1, 2001.

The issue, then, is whether Rodríguez-García's filing of
her state complaint on October 25, 2000, and her later amendment of
that complaint on August 31, 2001, tolled the statute of
limitations. Where suit is brought in Puerto Rico, federal law
under §§ 1981, 1983, and 1985 borrows Puerto Rico law on tolling,
provided that it is consistent with underlying federal policy.
See Fernandez, 681 F.2d at 49-50 (applying this rule to § 1983
claims). Under 31 P.R. Laws Ann. § 5303, "[p]rescription of
actions is interrupted by their institution before the courts, by
extrajudicial claim of the creditor, and by any act of
acknowledgment of the debt by the debtor." When a complaint is

-10-

filed in the Commonwealth courts, the statute of limitations begins to run anew from the date on which that action "comes to a definite end." Silva-Wiscovich v. Weber Dental Mfg. Co., 835 F.2d 409, 410 (1st Cir. 1987) (quoting Siva-Wiscovich v. Weber Dental Mfg. Co., 19 P.R. Offic. Trans. 592, 604, 119 P.R. Dec. 550 (1987)). Here, that date would be November 9, 2001, when Rodríguez-García voluntarily dismissed her state complaint. See id. (voluntary dismissal without prejudice brings action to definite end).

Rodríguez-García's Puerto Rico complaint must assert causes of action "identical" to her federal claims in order to toll the statute of limitations as to those federal claims under § 5303. Rodriguez Narvaez, 895 F.2d at 43 (citing Fernandez, 681 F.2d at 49, and Ramirez de Arellano v. Alvarez de Choudens, 575 F.2d 315, 319-20 (1st Cir. 1978)). "[T]he filing of one action does not toll the statute of limitations for all claims arising out of the same facts." Fernandez, 681 F.2d at 49. The Supreme Court of Puerto Rico has approved this identicality requirement. See Cintron v. Estado Libre Asociado de P.R., 27 P.R. Offic. Trans. 582, 127 P.R. Dec. 582 (1990) (holding that a timely filed extrajudicial claim did not toll the statute of limitations for a suit in the Puerto Rico courts because it did not "pursue identical claims"). The identicality requirement prevents plaintiffs from circumventing the notice function of the statutes of limitations by asserting different claims in belated federal court complaints. Cf.

-11-

Rodriguez Narvaez, 895 F.2d at 43 (statutes of limitations exist to prevent defendants from being surprised by long-dormant causes of action).

In determining whether causes of action identical to Rodríguez-García's federal claims were brought in her state complaint, the first question is whether the basis for comparison is her original or her amended state complaint. The defendants argue that Rodríguez-García cannot rely on amendments to her state complaint because those amendments were filed on August 31, 2001, after the statute of limitations had already expired. Puerto Rico law, however, is to the contrary. Rule 13.3 of the Puerto Rico Rules of Civil Procedure provides that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth in the original pleading, the amendments shall relate back to the date of the original pleading." 32 P.R. Laws Ann. App. III R. 13.3. Both Rodríguez-García's amendments and her original complaint clearly arose out of the same transaction: her involuntary transfer because of her testimony in the Ethics Office investigation of Flores. Under Rule 13.3, her amendments relate back to the October 25, 2000 date of the original complaint and are thus timely. As a result, both the amended complaint and the original complaint are relevant bases for comparison.

The next issue is whether Rodríguez-García's original and amended state complaints contain causes of action identical to her federal claims.[1] Although the question is close, we conclude that the amended complaint is sufficient to meet the identicality requirement. We hold that in order to be identical under § 5303, claims must satisfy several requirements. They must seek the same form of relief. Ramirez de Arellano, 575 F.2d at 320; cf. Rodriguez Narvaez, 895 F.2d at 46 (extrajudicial claims, which also trigger tolling under § 5303, did not toll the statute of limitations when such claims sought different relief than the federal complaint did); Fernandez, 681 F.2d at 53 (same); Hernandez del Valle v. Santa Aponte, 575 F.2d 321, 324 (1st Cir. 1978) (same). The causes of action asserted must be based on the same substantive claims. And, provided that other Puerto Rico tolling statutes do not rescue the claims on other grounds, they must be asserted against the same defendants in the same capacities; new defendants should not be added.

Rodríguez-García's claims satisfy all of these requirements, with a few wrinkles that we describe in more depth

---

[1] The defendants argue that Rodríguez-García failed to argue to the district court that her claims were identical and has thus forfeited the argument. We disagree. In Rodríguez-García's opposition to the defendants' motion for summary judgment, she stated, "Defendants claim that the suit in state court was general [and] did not specify under what laws it was filed. It is clear however that [the plaintiff] claimed retaliation, constitutional rights, and political discrimination." Her argument is preserved.

below.  She sought the same form of relief in both complaints: injunctive relief and money damages.  Although the amount of damages differs in the two complaints, the allegation of damages in her state complaint gave the defendants the requisite "fair notice that [they] might be called upon to defend a damages suit, with different issues not applicable to a suit for injunctive relief." Hernandez del Valle, 575 F.2d at 324.

The harder question is whether Rodríguez-García's federal and state complaints assert the same substantive claims, despite differences in wording.  We conclude that Rodríguez-García's federal claims and the claims in her state complaint did rely on the same substantive legal ground: that she was transferred because she was not a member of the PDP and in retaliation for her testimony in the Ethics Office investigation of Flores and that this constituted "political discrimination" in violation of her "constitutional rights."  There are three significant differences in the wording of the legal claims in her state and federal complaints.  But, as we discuss below, none of those three differences indicates a change in Rodríguez-García's substantive claim.

First, Rodríguez-García's state complaint, unlike her federal complaint, did not expressly claim a violation of her federal constitutional right to "freedom of speech and affiliation."  But a freedom of speech and affiliation claim was

certainly implied in the state complaint by the allegations of "political discrimination" in violation of her "constitutional rights."  The state complaint did not specify whether this claim was based on the Puerto Rico or federal constitution, and claims based on political discrimination may be brought under both constitutions.  See P.R. Const. art II, § 1 ("No discrimination shall be made on account of . . . political or religious ideas."); Mullin v. Town of Fairhaven, 284 F.3d 31, 37-38 (1st Cir. 2002) (discrimination against public officers based on their speech can violate the First Amendment of the United States Constitution).  In some situations, a plaintiff's failure to specify the constitution upon which a claim is based could raise concerns about fair notice. But in this instance, the substantive protections for freedom of speech and association under the Puerto Rico Constitution are at least as broad as the protections under the federal constitution. See Empresas Puertorriqueñas de Desarrollo, Inc. v. Hermandad Independiente de Empleados Telefónicos, 2000 PRSC 71 (2000). Regardless whether the claim was based on the Commonwealth or the United States Constitution, the defendants were on notice that their actions would be held, at a minimum, to the federal constitutional standard.

Second, Rodríguez-García's state complaint did not expressly refer to §§ 1981, 1983, and 1985.  But that does not affect the substance of the claims alleged.  The defendants were on

-15-

notice of the federal constitutional violation forming the substantive basis of those claims. See Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979) ("[Section 1983] is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by . . . the United States Constitution and federal statutes."). In determining whether plaintiffs have asserted identical legal claims, we look to the substantive rights asserted, not the procedural vehicles involved. This has been the Puerto Rico Supreme Court's approach in cases involving extrajudicial claims. Under § 5303, "[p]rescription of actions is interrupted by their institution before the courts, [or] by extrajudicial claims." For an extrajudicial claim to trigger tolling, just as for a judicial claim to do so, the causes of action must be identical. Benitez-Pons v. Puerto Rico, 136 F.3d 54, 59 (1st Cir. 1998). In Matos Molero v. Roche Products, Inc., 132 P.R. Dec. 29 (1993), the Puerto Rico Supreme Court held that the filing of an administrative complaint before the Equal Employment Opportunity Commission alleging sex discrimination in violation of Title VII tolled the statute of limitations for an equivalent cause of action under Puerto Rico law. The causes of action in Matos Molero were identical because they asserted the same substantive claim, albeit via different procedural vehicles. See Leon-Nogueras v. Univ. of P.R., 964 F. Supp. 585, 589 (D.P.R. 1997) (noting that Matos Molero is "perfectly consistent with the

-16-

requirement that the substantive claims raised in the extrajudicial claim must be identical to the substantive claims raised in the subsequent judicial complaint"). This approach makes sense in the context of both judicial and extrajudicial claims. The substantive claim, and not the procedural vehicle, is what matters to defendants in the initial stages of preparing for litigation and discovery. And, although § 1983 actions may be brought in state courts, not all federal procedural vehicles may be used in state courts. It would be perverse and a source of disharmony in the federal system to make a state tolling statute turn on the availability of federal procedural vehicles.

Third, Rodríguez-García's federal complaint added allegations that the defendants acted intentionally or with deliberate indifference in discriminating against her and that the defendants approved or ratified Rodríguez-García's transfer. But these allegations simply present, in a different form, allegations already made in her state complaint. To demonstrate political discrimination under the First Amendment, plaintiffs must show that "the protected expression was a substantial or motivating factor in the decision to remove them from their posts." Mullin, 284 F.3d at 38. Thus, by alleging political discrimination in her state complaint, Rodríguez-García had already alleged, by implication, that the defendants made a decision to transfer her and that the decision was an act of intentional discrimination based on her

-17-

political beliefs. In sum, Rodríguez-García's causes of action in her state and federal complaints were based on the same substantive claim and sought the same forms of relief.

As to the requirement of identicality of parties, Rodríguez-García's claims in her federal complaint were not asserted against exactly the same defendants in the same capacities as in her state complaint. Her federal complaint added claims against a new defendant, Vice-Mayor Puig, and against Mayor Miranda-Marín in his personal, as opposed to official, capacity. Ordinarily, § 5303 would not toll the statute of limitations as to these additional claims. Defendants not sued in the original complaint cannot be expected to be on notice of plaintiffs' claims. And defendants sued only in their official capacities in the original complaint cannot be expected to be on notice of the very different issues raised by claims against them in their personal capacities. But in this instance, the defendants have waived any objection to the statute of limitations on this basis. Even assuming that the defendants' brief reference to the issue in their motion for summary judgment was sufficient to preserve the argument below, the defendants failed to mention it at all in their brief on appeal. The issue is waived. Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 309 (1st Cir. 2002).

In finding that Rodríguez-García's federal claims are timely, we defer to certain choices that Puerto Rico has made.

Although Puerto Rico construes its tolling rules strictly, <u>see</u> <u>Rodriguez Narvaez</u>, 895 F.2d at 43, it allows plaintiffs to meet the statute of limitations as long as their complaints are detailed enough to put defendants on notice of the general nature of their claims. "[P]leadings have only one mission: to show <u>in a general way</u> which are the claims and defenses of the parties." <u>Pressure Vessels P.R.</u> v. <u>Empire Gas P.R.</u>, 137 P.R. Dec. 497 (1994) (emphasis added). This liberal approach is also evident in Puerto Rico's relation-back rule for amended complaints. 32 P.R. Laws Ann. App. III, R. 13.3. Our result reflects the concern that a different outcome here on the identicality requirement would contravene local policy choices on an issue on which those choices are to be honored.

## III.

The district court's holding that the plaintiff's federal claims are untimely is reversed. We vacate the grant of summary judgment and, noting that the district court has not yet ruled on the defendants' remaining arguments in favor of summary judgment, remand for further proceedings consistent with this opinion. Costs are awarded to Rodríguez-García. So ordered.